**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | |
|---|---|
| KEVIN CANNON § | |
| § | |
| V. § | |
| § | A-08-CA-848 LY |
| MICHAEL J. ASTRUE § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATED MAGISTRATE JUDGE**

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Original Complaint seeking reversal of the final decision of the Social Security Administration (Clerk's Doc. No. 4); Plaintiff's Brief in Opposition to the Commissioner's Decision (Clerk's Doc. No. 14); and Defendant's Brief in Support of the Commissioner's Decision (Clerk's Doc. No. 15). Also before the Court is the Social Security record filed in this case (Cited as "Tr."). Plaintiff Kevin Cannon appeals from the determination that he is not disabled and presents for review three issues: (1) whether proper weight was given to Plaintiff's treating doctor's opinion; (2) whether the residual functional capacity found by the ALJ was based on the medical evidence; and (3) whether the ALJ's decision that the Plaintiff is not disabled is based on substantial evidence or the proper legal standard in regard to the vocational findings. The undersigned submits this Report and Recommendation to the United States District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(h) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I.  GENERAL BACKGROUND**

On March 22, 2006, Kevin Cannon (hereinafter "Cannon" or "Plaintiff") filed an application for benefits under Titles II and XVI of the Social Security Act (the "Act"), alleging disability

beginning October 28, 2005 (Tr. 8). The claim was denied initially on June 7, 2006, and upon reconsideration on August 30, 2006 (Tr. 26, 34). Cannon requested a hearing before an Administrative Law Judge ("ALJ"), which was held on September 24, 2007, in Austin, Texas (Tr. 8, 74–100). The ALJ issued an unfavorable decision dated December 13, 2007, finding that Cannon was not disabled within the meaning of the Act (Tr. 8–16). The Appeals Council declined Cannon's Request for Review by notice on June 14, 2008, making it the final decision of the Commissioner (Tr. 17–19). After receiving an extension of time to file a civil action from the Appeals Council, Cannon brought the instant action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying him benefits under the Act.

## II. THE HEARING BEFORE THE ALJ

On September 24, 2007, Administrative Law Judge Roy J. Richardson held a hearing on Cannon's application for benefits. Cannon testified at the hearing and was represented by his attorney, Bob Richardson (Tr. 74).[1] Donna Eager, a vocational expert, also appeared and testified at the hearing (Tr. 74, 96–100).

**A.     Plaintiff's Testimony**

Plaintiff Kevin Cannon was born July 28, 1977, and he was 28 years of age on the alleged disability onset date (Tr. 15, 77). Cannon attended high school until he was in the ninth grade, and in 1995 he received a GED (Tr. 77). At the hearing, Cannon testified that he was unable to work because he weighs 523 pounds and has a lot of pain in his legs, particularly in his left leg, knee and ankle (Tr. 80–81). In response to questioning from his attorney, Cannon testified that he also suffers from depression, although he did not specifically say that this was a reason he was unable to work (Tr. 89–93). In regard to daily activities, Cannon stated that he dresses and showers himself daily,

---

[1]In this appeal, Cannon is represented by Mary Ellen Felps.

and he does the cooking, cleaning, laundry, grocery shopping, and yard work (Tr. 83, 85). He also stated that he sometimes helps push his mother in her wheelchair (Tr. 86).

B.     **Vocational Expert's Testimony**

The vocational expert was asked by the ALJ whether an individual with the claimant's age, education, work experience, and residual functional capacity would be able to perform any work in the economy (Tr. 96–98). The vocational expert testified that, given all of these factors, the individual would be able to perform the requirements of occupations such as final assembler of optical goods, hand mounter in a photo finishing lab, and hand suture winder (Tr. 97–98). The vocational expert also testified that there are approximately 80,000 jobs as a final assembler of optical goods in the national economy (and approximately 6,000 of these jobs in the Texas economy), approximately 30,000 jobs as a hand mounter in a photo finishing lab in the national economy (and approximately 2,500 of these jobs in the Texas economy), and approximately 60,000 jobs as a hand suture winder in the national economy (and about 4,500 of these jobs in the Texas economy) (Tr. 97–98).

### III.  FINDINGS OF ADMINISTRATIVE LAW JUDGE

The ALJ found that Cannon has the following severe impairments: morbid obesity, hypertension, arthralgias, depression, and a schizoaffective disorder (Tr. 10). The ALJ then found that Cannon does not have an impairment or combination of impairments that meet or medically equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 11). After careful consideration of the entire record, the ALJ found that Cannon had the residual functional capacity to lift and carry ten pounds occasionally and less than ten pounds frequently, stand and walk two hours in an eight-hour workday, sit six hours in an eight-hour workday, and push and pull in the amounts given (Tr. 11). Additionally, the ALJ found that Cannon could occasionally climb ramps

3

and stairs and occasionally stoop, kneel, crouch, and crawl, but he must avoid climbing ladders, ropes, and scaffolds. The ALJ found that in spite of his mental limitations, Cannon could understand, remember, and carry out routine step instructions, and respond appropriately to supervisors and co-workers in jobs that do not require independent decision making and that do not require more than occasional changes in the work setting or more than incidental interpersonal contact (Tr. 11). After considering Cannon's age, education, work experience, and residual functional capacity, the ALJ found that he was capable of performing other jobs that exist in significant numbers in the national economy (Tr. 15–16). Accordingly, the ALJ found that Cannon was not disabled as defined in the Act (Tr. 16).

## IV. ISSUES BEFORE THE COURT

Cannon contends that the ALJ's decision is not supported by substantial evidence and is not based upon the proper legal standards. Specifically, Cannon argues that (1) proper weight was not given to his treating doctor's opinion; (2) the ALJ's finding in regard to his residual functional capacity is not consistent with the medical evidence; and (3) the ALJ's decision that he is not disabled is not based on substantial evidence or the proper legal standard in regard to the vocational findings.

## V. STANDARD OF REVIEW

In Social Security disability appeals, the limited role of the reviewing court, as dictated by 42 U.S.C. § 405(g), is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether the Commissioner applied the proper legal standard. *Kinash v. Callahan*, 129 F.3d 736, 738 (5th Cir. 1997); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*,

895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *James v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). Courts weigh four elements of proof when determining whether there is substantial evidence of a disability: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) the claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). However, the reviewing court cannot re-weigh the evidence, but may only scrutinize the record to determine whether it contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Martinez*, 64 F.3d at 174. If supported by substantial evidence, the Commissioner's findings are conclusive and are to be affirmed. *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

## VI. ANALYSIS

**A.     Did the decision fail to give proper weight to Cannon's treating doctor's opinion?**

Under this issue, Cannon asserts that the ALJ failed to give proper weight to his treating doctor's opinions in determining his residual functional capacity ("RFC"). Specifically, Cannon complains that the ALJ failed to include in the residual functional capacity finding the treating doctor's requirement that Cannon elevate his legs when seated, in spite of there being no evidence controverting this opinion. After reviewing the evidence in the record, the Court believes that the ALJ committed no error in not including the requirement that Cannon elevate his legs when seated in the residual functional capacity.

5

First, the Court notes that while Cannon argues the ALJ ignored the opinion of a treating physician, it is unclear that Dr. Vander Straten had even established a treating relationship when he rendered his medical opinions regarding Cannon's limitations. The evidence shows that Dr. Vander Straten saw Cannon on only two occasions in July and October of 2006 prior to offering this opinion (Tr 14, 257–260). In the Residual Functional Capacity Questionnaire completed by Dr. Vander Straten, the doctor himself noted that he had only seen Cannon two times prior to completing the Questionnaire, and several of the questions were answered with "unknown," including the question asking for an estimate of Cannon's functional daily limitations (Tr. 354–360). Furthermore, in his medical report, Dr. Vander Straten noted that Cannon was "looking for assistance with disability and any 'testing' which will help his cause" (Tr. 259). *See Shannon v. Chater*, 54 F.3d 484, 486 (8th Cir. 1995) (plaintiff's encounters with doctors appeared to be linked primarily to obtain benefits, rather than to obtain medical treatment).

Moreover, the ALJ did consider relevant factors when determining whether or not to include this limitation in his RFC finding. First, the ALJ noted how Cannon testified that his leg had been swollen since March of 2006, yet no medications were prescribed for this (Tr. 14). The ALJ also considered Cannon's testimony in regard to his activities of daily living. *Id.* In light of this evidence, the ALJ found that there was insufficient evidence to establish that this would last 12 months with the use of prescription medicine. Accordingly, the ALJ did not include functional limitations requiring Cannon to elevate his legs. *Id.*

In sum, the undersigned does not believe that the ALJ committed any error in not including this limitation in his RFC finding.

**B.      Was the ALJ's finding in regard to the Plaintiff's residual functional capacity inconsistent with the medical evidence**

In Cannon's second issue for review, Cannon argues that the RFC was inconsistent with the medical evidence in regard to three areas: the failure to include the requirement that his legs be elevated when seated;[2] the finding that Cannon could occasionally stoop, kneel, crouch and crawl; and the limited mental health limitations found by the ALJ. In reviewing this issue, it is important to keep in mind the limits of the Court's review, which is to determine whether the record contains substantial evidence to support the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). Only if no credible evidentiary choices or medical findings exist to support the decision will the Court make a finding of no substantial evidence. *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988).

   1.   *Was it error to find that Cannon could occasionally stoop, kneel, crouch and crawl?*

Cannon argues that the medical evidence of record shows that Cannon would certainly be precluded from kneeling, crouching, crawling, and to a great extent stooping. After reviewing the record, the Court believes that substantial evidence, as detailed below, supports the ALJ's RFC finding in this regard.

On May 9, 2006, Dr. Grey conducted a physical examination on Cannon. Following this examination, Dr. Grey reported that Cannon was able to move in all extremities, that his muscle tone was normal, and that Cannon was able to squat to one-fourth of the way down (Tr. 220). Dr. Grey reported Cannon's knee flexion to be 100°, and his seated straight leg raise was "essentially normal" (Tr. 220). Dr. Grey also noted that "[r]ange of motion of the lumbar spine shows flexion of 75°, extension of 20°, and lateral bending of 30° with minimal pain" (Tr. 220).

---

[2] The undersigned has already determined that the ALJ committed no error on this point and will not address this argument again.

While at the physical examination, Cannon told Dr. Gray that he was able to do the following activities: drive, climb stairs, get in and out of bed, reach over his head, and shower and dress without assistance (Tr. 217). Cannon also told Dr. Gray that he was not taking any medications at the time of the examination (Tr. 217). At the hearing before the ALJ, Cannon testified that he performed activities such as yard work, cleaning, and laundry, all of which would likely include the need to stoop, kneel, and crouch. Cannon also testified at the hearing that he was still not taking any prescription medications for his leg or for anything else (Tr. 82).

This evidence—the results of his physical examination, his statements regarding his abilities to do physical activities, and his lack of medication—supports the finding that Cannon could *occasionally* stoop, kneel, crouch and crawl. Accordingly, the undersigned believes that the ALJ committed no error in finding that Cannon could occasionally stoop, kneel, crouch and crawl.

   2.   *Did the ALJ err in regard to mental health limitations?*

Cannon next argues that his mental impairments were more severe than those found by the ALJ. In support, Cannon refers the Court to the psychological evaluation Dr. Langford conducted on May 8, 2006, arguing that "the examining psychologist, Dr. Langford, reported that Cannon's 'mood could deteriorate and he might be vulnerable to more serious problems, as he appears to have had in the past' were he to attempt attending school or working."[3] Pl. Brief at 7. Cannon also asserts that "Dr. Langford gave [him] a GAF of 55 which is indicative of *serious* occupational limitations."[4]

---

[3] This misrepresents what was actually said in the report. What Dr. Langford said was that "if his plans for college or other plans for the future do not go as he wants, his mood could deteriorate and he might be vulnerable to more serious problems, as he appears to have had in the past" (Tr. 215). In other words, Dr. Langford felt Cannon's mood could deteriorate if he was *unable* to attend school, which is almost the complete opposite of what Cannon represented to the Court.

[4] On this point, it is true that Dr. Langford reported a GAF of 55; however, this is indicative of moderate, rather than serious occupational limitations. *See White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 787 (6th Cir. 2009).

Pl. Brief at 7 (emphasis added). Cannon does not articulate what mental impairments he believes the ALJ should have found, nor does he show how the failure to do so affected the outcome in this case. Rather, he merely offers the evidence cited above and then states that the "case should be remanded for a more careful scrutiny of the medical evidence of mental impairments of a greater severity than the ALJ has recognized." *Id.*

After reviewing the record, the undersigned believes that substantial evidence supports the ALJ's findings and therefore will not recommend remand on this basis. Dr. Langford's report taken as a whole, which is the sole piece of evidence Cannon offers in support of this argument, actually supports the ALJ's findings in regard to mental impairments.

In the evaluation, Dr. Langford reported on Cannon's mental status, noting how Cannon's mood and affect were normal, how Cannon's thought processes seemed mostly logical, and how Cannon did not exhibit any outward evidence of depression or anxiety (Tr. 214). The doctor further reported that Cannon's memory was intact, and that his concentration was only slightly impaired as evidenced by errors on counting tasks (Tr. 214). According to the evaluation, Cannon's attention, persistence, and pace were also within normal limits (Tr. 214). Additionally, Dr. Langford did not diagnose Cannon with any mental disorder, ruling out depressive disorder and psychotic disorder (Tr. 215).

As for the GAF of 55, which indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning, Dr. Langford's report indicates that Cannon generally functions at a level higher than his GAF score. Accordingly, the ALJ found that Cannon could respond appropriately to supervisors and co-workers in jobs that do not require independent decision making and that do not require more than occasional changes in the work setting or more than incidental interpersonal contact. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002)

9

("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's accuracy.").

Because there is substantial evidence to support the findings of the ALJ, the ALJ committed no error in regard to Cannon's mental limitations.

**C.  Was the ALJ's decision that Cannon is not disabled based on substantial evidence or the proper legal standard in regard to the vocational findings?**

In his final issue for review, Cannon argues that he would not be able to perform the occupations listed by the vocational expert if the ALJ's decision incorporated more severe limitations (as argued above) into the RFC finding. In other words, had the ALJ found that Cannon could not occasionally stoop, kneel, crouch and crawl, and had the ALJ included the treating doctor's requirement that Cannon elevate his legs when seated, then Cannon would not be able to perform the jobs listed by the vocational expert, and a finding of disabled would be appropriate. Because the undersigned has determined that the ALJ committed no error in making the RFC findings, this argument, which is dependant on Cannon's previous arguments, is without merit. Accordingly, the undersigned does not believe this issue is grounds for remand.

## VII. RECOMMENDATION

Based upon the foregoing, the undersigned finds that the Commissioner's decision is supported by substantial evidence and correctly applies the relevant legal standards. Accordingly, the undersigned Magistrate Judge **RECOMMENDS** that the District Judge **AFFIRM** the decision of the Commissioner in this case and **ENTER JUDGMENT** in favor of the Defendant.

## VIII. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are

being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-153, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 15th day of January, 2010.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE